Nott, J.,
delivered the opinion of the court:
This case was among the first of the French spoliation cases which came before the court, having been submitted in June, 1888. On the 31st December following the court, in view of the novel questions and large amounts involved in this branch of its jurisdiction and out of abundant caution, remanded the case for argument upon the facts found. For reasons not knowfi to the court the hearing has been postponed until the present time, January, 1892.
Since the case was sent back for argument the legal question involved has been deliberately considered in many other cases, and repeatedly decided in favor of the claimants. The principle which governs it is now so well settled, that no extended discussion is needed.
The twenty-fifth article of the Treaty of Amity and Commerce 1778 (8 Stat. L., 12, 26), is in these words:
“To the end that all manner of dissentions and quarrels may be avoided and prevented on one side and the other, it is agreed that in case either of the parties hereto should be engaged in war, the ships and vessels belonging., to the subjects or people of the other ally must be furnished with sea letters or passports, expressing the name, property, and bulk of the ship, as also the name and place of habitation of the master or commander of the said ship, that it may appear thereby that the ship really and truly belongs to the subjects of one of the parties, which passport shall be made out and granted according to the form annexed to this treaty; they shall likewise be recalled every year; that is, if the ship happens to return home within the space of a year. It is likewise agreed that such ships, being laden, are to be provided not only with passports as above mentioned, but also with certificates containing the several particulars of the cargo, the place whence the ship sailed, and whither she is bound, that so it may be known whether any forbidden or contraband goods be on board the same; which certificates shall be made out by the officers of the place whence the ship set sail in the accustomed form; and if any one shall think it fit or advisable to express in the said certificates the person to whom the goods on board belong he may freely do so.”
*121 It is manifest that tlie purpose of a treaty of amity and commerce between two friendly maritime powers must bave been to mitigate, and not to augment, the severities of international law. The article now under consideration, moreover, expressly declares that it has been adopted “to the end that all manner of dissensions and quarrels may be avoided and prevented on one side and the other.” The article then provides that when either power is engaged in war the ships of the other shall carry a sea letter or passport and a certificate or manifest. The former is to be not more than one year old, and the latter to be issued “ by the officers of the place whence the ship set sail,” and to contain “the several particulars of the cargo.”
Armed with these two instruments, a ship upon the high seas, according to the twenty-seventh article, was free from search. A ship of war or privateer might send her “boats aboard the merchant ship,” but when the latter had exhibited ber “passport concerning the property of the ship,” she should “be free and at liberty to pursue her voyage.”
The absence of these two papers, the sea letter or passport and the certificate or manifest, did not not render the merchant vessel liable to condemnation; it simply left her without the benefits of the twenty-seventh article, and in this particular subject to the rules and requirements of international law.
In the present ease the Venus did not carry the two prescribed papers, the passport and manifest, but she did have on board her register and crew list. The absence of the former papers may have rendered her liable to detention and search, but did not afford the slightest ground for capture and condemnation. As soon as the searching vessel ascertained the nationality of the Venus from an inspection of her register, and perhaps the innocence of her cargo by actual search, the right of detention was at an end, and the vessel free to pursue her voyage. For the captors then to carry her into a French port, and for a French tribunal to assume a right of condemnation, was clearly unauthorized by the terms of the treaty and in violation of our maritime rights as regulated by international law.
The order of the court is that the findings of fact, together with the conclusions of law now filed, and the opinion of the court, be reported to Congress.