Weldon, J.,
delivered the opinion of the court:
The brig Sally, Wells, master, on or about the 15th of August, 1799, sailed on a commercial voyage from New London, Conn., bound for Barbadoes. While pursuing said voyage she was captured on the high seas by the French privateer Conquest of Itaty. The facts of the capture are set forth in the protest of the master and two of the crew, made at St. Croix on the 2d of January, 1800. The substance of the protest is that the ship sailed as aforesaid for the island under convoy of the United States sloop of war Connecticut, commanded by Moses Tryon; that at 10 p. m. on the 17th of October in a heavy gale of wind the ship, with other vessels of the convoy, parted from the sloop of war and could not after that time fall in with her; that the voyage continued until the 16th of November, when the Sally was captured by the French privateer Conquest of Italy, Captain Longois; that deponents with six more of the crew were put on the privateer and ordered to Guadeloupe.
The privateer continued-her cruise until the 25th of November, when she arrived at Guadeloupe, where they found the brig Sally and cargo condemned and sold. Some of the crew wei’e put into prison, “others got liberty to work.”
It is shown by the findings of fact that the ship belonged to Thomas Sandford; and by reason of the capture the brig Sally was a total loss, there being no insurance on the vessel or cargo. The value of the vessel at the time of capture ivas $4,593.75; freight earnings, $2,186.62; making a total loss of $6,780.37. . The cargo of the Sally at the time of capture consisted of live stock, produce, beef, pork, and poultry; but who were the owners of the same does not appear.
It is insisted by the defendants that the findings of fact do *77 not justify a legal conclusion in favor of the claimant; that the capture and condemnation of the brig- Sally are not shown to be illegal, and therefore they fail to establish any claim against the United States; that there is no decree of condemnation, and no reason is assigned in the evidence why such decree is not produced; and that the circumstances and facts disclosed by the protest do not establish an illegal capture upon the part of the privateer.
The ship sailed, as shown by the'findings, from the port of her departure under convoy of the United States sloop of war Connecticut, and that convoy would have continued if it had not been for a heavy gale of wind which separated the Sally and other vessels from the company of the convoying ship. It is not necessary in this case to 'discuss or determine the legal effect upon the rights of the claimant growing out of the fact that the voyage was commenced illegally as against the right of the French vessel to examine and search the Sally in order to ascertain her character and the nature of her cargo, as affecting the right of the French privateer or ship of war in the exercise of the right of search and seizure. That question is fully discussed and disposed of in the ship Galen (post, p. 89):
“The privateer continued her cruise until the 25th of November, when she arrived at Guadeloupe, where she found the brig Sally and cargo condemned.”
This is the only fact stated in the record to show that there were proceedings of a judicial character based upon the capture as set forth in the protest. * It may be conceded, for aught that appears in the protest-^ that the seizure may have been legal, and it may be assumed,, from the condition existing at the time of the capture, that a state of war existed between the Republic of France and the Kingdom of Groat Britain which gave to the privateers and war ships of Franco the right of search of all neutrals and the right of seizure founded upon such search, in case a condition on the part of the neutral existed justifying such seizure.
But conceding that the capture of the vessel was legal and proper, it was the duty of the captain of the capturing vessel •to afford the captain of the Sally every reasonable opportunity to assert and maintain his rights in the proceedings to *78 condemn the vessel founded upon the capture. A question very similar to the one involved in this case was decided by this court in the case of the Good Intent (36 C. Cls., p. 262), Hazard, master, on the 15th of April, 1901, and the facts of that case and of this case being similar, the law announced in that case governs the rights of the parties in this proceeding. In the case of the Good Intent the protest shows that the schooner carried an innocent cargo; that she was seized on the 28th of February, 1800; that she was carried into the port of Basse Terre, where the master and crew were imprisoned until the 7th of March, when with the crew the master was put on board a vessel bearing a flag of truce and carried to the island of St. Christopher. In that case neither party produced a decree of condemnation.
The court said:
“Upon this state of facts we think it evident that if an international tribunal had been sitting at a time contemporaneous with the treaty of 1800, it would have been held that the protest made out a prima facie case, and that it was incumbent upon the French Government to produce a decree or other evidence to justify the seizure and explain why the master was deprived of the right of appearing before the prize court as the agent of the owners prosecuting their defence. ”
When the Sally was seized by the French privateer the master of the Sally had the right to an opportunity to appear and defend the ship and its cargo against the alleged illegality of the voyage. He was denied due process of law.
It is not the seizure which confers the right of property upon a seizing vessel, but it is a judicial determination of the question of the liability of the ship founded upon such seizure. It is competent for a protest to show the circumstances of the capture, what was done with the crew, and the fact of the sale of the ship. The terms of the decree of the sale in the absence of a proper showing could not be established by the testimony of witnesses, either verbal or written, but the fact whether the ship was sold is a fact which can be shown by the allegations of the protest.
The circumstances stated in the protest, and which are uncon-tradicted by- any other evidence in the case, establish the fact of the seizure, the disposition of the crew, and the fact of sale, and the absence of the master from the judicial pro *79 ceedings in which it may be the ship was condemned. We think the facts and circumstances of this case bring it clearly within the law as announced in the case of the Good Intent, and justify the conclusion that the claimant is entitled to a finding in his favor.
The findings of fact and the conclusion of law, with copy of this opinion, will be certified to Congress.