Weldon, J.,
delivered the opinion of the court:
The schooner Nancy, William Ward, master, sailed on a commercial voyage from Boston on the 23d day of January, 1799, bound to St. lago de Cuba. While peacefully pursuing said voyage she was seized on the high seas on or about the 10th day of Februaiy following, by the French privateer Rencontre, Andrew Caste, commander, but was subsequently recaptured by the British vessels Swallow, Argonaut, and Amitie, and taken to Kingston, Jamaica, where the court of *410 vice-admiralty decreed one-half the value of both the vessel and cargo as salvage, to be paid to the recaptors.
The Nancy was a duly registered vessel of the United States of 93f tons burden, built at Milton, Mass., in the year 1795, and was owned solely by William Smith, a citizen of the United States residing in Boston. The vessel and cargo were abandoned to the insurer as a total loss, and there is no claim filed in behalf of the owner of the vessel or cargo, the cargo also belonging to the owner of the vessel, but a claim is made on the part of several insurers who issued policies of insurance on the vessel and cargo, and who, in consequence of the capture and condemnation for salvage, paid to the owner of the vessel and cargo the full amounts of the respective policies, deducting 2 per cent therefrom.
The seizure was made by the French privateer on the 10th day of February, 1799, when war was flagrant between France and Great Britain and after the abrogation of the treaty which had been entered into upon the part of the United States with the Government of France of 1778, denominated Treaty of Amity and Commerce (8 Stat. L., 12).
At the time of the capture, under and by virtue of international law, the privateers of France had the undoubted and undisputed right to search, and if necessary to seize American vessels. The right of search is preliminary to the right of seizure, and the right of seizure depends upon the result of the exercise of the right of search. Search and seizure are not necessarity illegal, because in time of war the belligerents, founded upon the condition of war, have the right to the exercise of both. Upon the seizure "of a vessel, although neutral, all presumptions are in favor of the seizing vessel and the onus is thrown upon the seized vessel, and therefore when a seizure is made the presumption of law is that it was property made. If, upon the seizure, all presumptions are in favor of the seizing vessel, there is nothing in this case to indicate that the French vessel, in making a search and consequent seizure, acted illegally, so far as the mere seizure is concerned. If the seizure was made in a lawful manner, and if no illegality is shown to have existed in what the French privateer did afterwards, then no ground for recovery exists founded on seizure alone. The liability of France depends *411 upon what it did, and not being a party to the proceeding-in which the decree of salvage was made France is not bound by the legal effects of that decree, except as a mere measure of the damages suffered by the owners of the vessel. The liability of the United States in this proceeding is measured by the liability of France, and if no facts are shown which would make France liable (if this was a proceeding against France), then no liability-attaches to the United States under the treaty of September 30, 1800.
But the case does not stop with the mere seizure of the vessel. After the capture by the French privateer the Nancy was taken up a small river connected with Cumberland Bay, and while in the possession of the French the hatches of the vessel were broken open and sundry articles of merchandise, such as beef, pork, raisins, butter, hams, and gin were taken out, and also one trunk of goods belonging to the supercargo and a barrel belonging to the master, which were put on board the privateer; after the discovery of the brigs and schooner which recaptured the Nancy she was taken farther up the river and several other articles of merchandise were taken from her; the crew were taken out of the vessel, whereupon the captain demanded his papers, which were then in the possession of the captain of the privateer. On the 14th day of February, following the capture, the French took from the Nancy two iron and four wooden guns and carried them on shore with all their powder and erected a fort. The master again demanded the papers and received the same answer as before. After again demanding the papers they were told by the French that they had been burned on board the privateer by the neglect of the clerk not taking them out.
After these spoliations upon the part of the French in charge of the captured vessel she was recaptured from the French by the British vessel, as shown in the findings.
Upon the capture of the American vessel, it was the duty of the officers in charge of the French privateer, immediately to close and seal her hatches and with reasonable dispatch to take the American vessel into port and institute judicial proceedings to determine the lawfulness of the capture, affording the captain and crew of the American vessel every facility to defend their vessel in such proceeding.
*412 Incident to that obligation, it was the duty of the officers and crew of the French vessel to preserve in tact the American vessel and its cargo pending judicial proceedings, thereby preserving without diminution or destruction the property seized, so that in case of a decree in favor of the American owners the vessel might be restored with no other damage than the delay, for which remuneration might be made, if in the opinion of thé court no probable cause existed for the seizure.
The findings show, that a considerable portion of the cargo was taken from the Nancy by the crew of the French privateer; that the vessel was despoiled in many particulars by the acts of the French, and that the papers were burned on board of the privateer “by the neglect of the clerk in not taking them out.”
Whatever may have been the character of the capture, either legal or illegal, the acts of the French crew while in possession of the Nancy before its capture by the English vessel were in violation of all the rights of the captured part}r, and the transaction, taken as a whole, was in violation of the rules of international law, and therefore a liability attached to the Government of France. The effort to condemn as lawful prize must bo in all its essentials legal, and the omission of any important factor vitiates the proceeding as a lawful proceeding, as was held in the case of the Nancy, Wells, master (37 C. Cls. R., 74). Even though there maybe a legal seizure, it is the duty of the seizing vessel to follow such legal seizure by affording to the captured party all facilities of defense to which he may be entitled. The proceeding is a proceeding in rem, and it is the duty of the party seeking a condemnation to preserve the res in its original shape, using only such means as are necessary to its protection. The acts of the captors after capture being in violation of their duty, the court decides, upon the whole case, that the insurers had a valid claim for indemnity upon the French Government prior to the ratification of the treaty of September 30, 1800, and that they are entitled to recover, as shown in the conclusion of law, being a certain per cent paid by each underwriter on the amount underwritten by him.
The conclusions of fact and conclusions of law, with a copy of the opinion, will be reported to Congress.