Howry, J.,
delivered the opinion of the court:
The recitals of the decree of the prize court, if true, might warrant the view that the sea letter ivas insufficient and the condemnation legal. There may have been, as the decree alleges, neither register, charter party, invoice, nor bill of lading on board the vessel at the time of her capture, and it may be that the vessel came from an enemj^s port. But it is needless to measure the sufficiency of the papers on board or to determine nationalitj' or ownership of the vessel b3r anything disclosed in the action of the prize court under the view wo are constrained to take of the order of condemnation.
Where the decree of the prize tribunal is silent as to the *474 presence of the parties in interest, and there is neither protest nor proof equivalent to it showing that' the owners or their agents were denied a hearing, the presumption is that they were present and given an opportunity to defend. But where it can be gathered from the action of the prize court or from proof contemporaneous with the transaction that the proceeding was one of those which justified the American complaint of that period respecting condemnations without notice to vessel owners, no effect will be given to the summary disposition of a vessel under such a decree.
In this case the condemnation is not sufficiently established. The decree can not be accepted for that purpose, because the proceeding was ex parte. On its face the decree shows that the decision, upon its announcement, was to be notified to the master of the vessel, but there is nothing to show the presence of the master or other person in interest at the hearing.
The proof in the case is a story of wrong and injustice to the merchantman. It sufficiently appears that the privateer took possession of the Thetis, carried the master and four of the seamen to the capturing vessel, leaving the mate, three seamen, the captain’s wife, a girl, and a black boy on board the Thetis, which was then ordered to Port au Paix, where the privateer belonged; that they sailed in company with another brig and the privateer until spoken by a Spanish frigate, when the privateer left them; came to anchor witli the brig in the bay of Monte Ohriste, when the prize master obtained a pilot and proceeded to Fort Dauphin; from thence the mate went to Cape Francois to put in a claim for the vessel and cargo, being the only officer left on board; that the mate applied to the American consul at the cape, who with him waited on the administration, but neither were permitted to see the authorities; that they sent a petition in writing to the administration, but obtained no answer, and afterwards the prize master disclosed to the mate the condemnation of the vessel and the cargo. The cargo was subsequently landed and sold at public sale. The trunks and chests on board were rifled of their contents, the captain and passengers deprived of their belongings, and the mate turned out of the vessel, after which the mate, with the captain’s wife, the girl, and the black boy, took passage home.
*475 In formulating the general principles of proceeding in prize . courts in a letter to Mr. Jay on behalf and at the request of the Government of the United States, by Sir W. Scott and Mr. J. W. Nicholl, in 1791, the following principles were declared:
“Before the ship or goods can be disposed of by the captor there must be a regular judicial proceeding, wherein both parties may be heard, and condemnation thereupon as prize in a court of admiralty, judging by the law of nations and treaties. The proper and legal court for these condemnations is the court of that state to whom the captor belongs.” (1 Am. St. Pap. (For. Rel.), 494 ff; 3 Wharton’s Int. L. Dig., sec. 330.)
The general principle was recently declared in two cases by this court that owners have a right to defend their property in order to show facts which will establish the illegality of the seizure. (The Good Intent, 36 C. Cls. R., 262; the Sally, 37 C. Cls. R., 74.) The decisions in these cases arose in proceedings where it appears that no decrees of condemnation were produced and no evidence of any other kind was offered to justify the seizure. The cases differentiate themselves from the present proceeding in that a decree is relied upon here. But here', as in the cases cited, the essential things to be investigated are the regularity of the proceeding in the prize court and the opportunity given to the parties in interest to appear and defend. West Indies decrees of that period were often characterized by a total disregard of the right to-be heard, and in this case wo think the decree should not pre • vail against the protest and the uncontradicted recital of the summary method adopted by the French to appropriate the cargo. The proceeding was void, and not merely voidable. The fundamental distinction between a void transaction and one merely voidable is too well understood to be elaborated, if indeed elaboration were necessary.
The findings of fact and the conclusions of law, with a copy of this opinion, will be certified to Congress.