Howry, J.,
delivered the opinion of the court:
The brig Maria, Watts, master, sailed on a commercial voyage about September 20, 1798, bound from Tobago to Portsmouth, N. H. While peacefully pursuing her voyage, the brig was taken on the high seas by the French privateer La Revanche and carried into Port de la Liberté and condemned, with everything on board, by the'tribunal of prizes sitting at Basse Terre, Guadeloupe.
The findings establish the capture and confiscation of the vessel and whatever cargo there was and the illegal nature of the seizure and decree of the prize court. The resulting conclusions of law entitle the owners to the proven value of the brig.
• The ownership of seven-eighths of the vessel is clearly proven. The remaining one-eighth interest is alleged by the petitioners to have been in one James Shapley, under a charter derived from one of the original owners under circumstances, which, in effect, it is contended, transferred the ownership of this fractional interest to Shapley.
It appears that before the vessel sailed one Peter Wilson was the owner of two-eighths of the brig. According to the certificate of registry, Wilson, Lowe, and Leigh were the sole owners of the ship. In the proceedings preliminary to the decree after the capture the master claimed ownership of both *42 vessel and cargo in himself, Lowe, Leigh, and Wilson, but we are unable to find that the master was a part owner.
Many years after the loss of the vessel Wilson disclaimed more than one-eighth interest in the brig, according to an affidavit in the record, which shows that before the sailing of the vessel Wilson 'had chartered an eighth interest to Shapley, who in turn insured the same in Wilson’s favor. After the confiscation Shapley paid Wilson for the loss of the eighth interest so chartered, and his next of kin now insist that he is entitled to the allowance which otherwise would go to Wilson.
The subsequent affidavit made bjr Wilson is incompetent to establish anything in his favor; but treating it as a declaration against interest on his part, we think its statements are sufficient to establish Shapley’s equitable right to the eighth interest chartered to him by the owner, and as Wilson is not claiming the amount now claimed by Shapley’s next of kin, they are entitled to a recovery of the amount of the loss under the charter.
In the case at bar the charter of an eighth interest for a consideration gave Shapley a special interest in the vessel as against the original owner of that interest. The master’s possession was for the use and benefit of the chartered right as much as for the original owner from whom the right was acquired. To all intents and purposes Shapley was as much the owner of one-eighth interest as Wilson was of the other eighth, and, the original owner disclaiming as to this eighth, the award for the loss follows accordingly to the charterer for that much.
The claim for the cargo presents a different question.
It is assumed that because the outward cargo amounted to $4,000 worth of goods the homeward cargo was the result of the investment of the proceeds with the freight taken out; but there is no proof of this. The affidavit, made nearly forty years after the occurrence, by one of the alleged owners is not competent to establish the application of the proceeds of the outward-bound freight to the purchase of the homeward-bound cargo. This affidavit, like a subsequent memorial, not being contemporaneous, could not be considered as evidence when filed and has not become so by the lapse of time. (The Ship Parkman, 35 C. Cls. R., 406.) Papers executed twenty-two *43 years after the occurrence of the matters to which they are supposed to relate can not be considered as ancient documents. (The Brig Juno, 36 C. Cls. R., 239.) The person making the affidavit was not present when the ship was seized or condemned, and on its face there is nothing to show that the affi-ant had any personal knowledge of a cargo. Even if the affidavit were admissible, the court could attach no value to its statements.
There was undoubtedly some kind of a cargo. The evidence of the master before the prize court shows it to have consisted of rum, molasses, and old iron. In the absence of more specific proof the presumption arises that the cargo was the equivalent of the carrying capacity of the vessel. It devolves upon the defendants to show against the claim for freight earnings in this state of affairs that the measure of the quantity of stuff on board was less than the tonnage of the brig. This not having been done, the claim for the freight earnings of the brig is allowed.
The claim for the value of the cargo is void for uncertainty. No proof that the cargo, whatever it was, had any value has been offered. None has been suggested beyond that indicated in the contention that the proceeds of the outward-bound cargo were invested in the freight of the return voyage. As this contention is not accepted, the claim for the value of the cargo must be rejected. Without some criterion from the competent evidence in the case to judge of the matter, we are unable to say that the freight was certainly valuable. Presumably it was, but the court can not enter the domain of conjecture to determine it.
The conclusions of the court will be reported to Congress.