Howry, J.,
delivered the opinion of the court:
The Nantasket was condemned and confiscated at St. Bartholomew. The decree recites that upon an analysis of the papers it was found that the sea letter, being in contravention of the passport, did not follow the form prescribed by the model annexed to the treaty of 1778 and that the vessel for that reason was condemned. But this was after the abrogation of the treatjr of 1778. The alleged deficiencjr in the róle d’équipage was insufficient to authorize the decree, and the resultant condemnation was therefore illegal.
The first question that arises relates to the ownership of the vessel. It is contended for the claimants that David Spear owned two-thirds of the schooner, but the defendants insist that the only evidence of that allegation is a statement in the subsequent insurance receipt, which is not sufficient to prevail against the evidence supplied bjr the register showing equal ownership in Spear and another. As the only persons be- *123 lore the court making claim to the vessel are Spear’s representatives, the dispute as to ownership narrows itself to what title Spear had in the vessel at the time of the capture.
The original register produced at the hearing discloses ownership of the vessel the year before the sailing in one Ryder, Spear, and Bates. This register seems to have been canceled by a subsequent register, according to a memorandum which appears on the back of the original evidence of ownership to the effect that the property was partially transferred. The memorandum discloses nothing else, but the second register shows that in the year of the capture “Spear and Bates are the only owners of the ship or vessel called the Nantasket, of Boston.” After confiscation Spear receipted the insurance company, surrendering the right, title, and interest he possessed in the schooner, so far as the same was insured, warranting himself in the receipt to have been the true and lawful owner of a two-thirds interest.
If there was nothing in the case but the register in force when the vessel went to sea, the presumption would be that Spear was the owner of one-half interest in the vessel only. Joint owners are presumed to own equal parts in vessel and cargo; but insurance bjr each in different proportions' may rebut this presumption. (The Betsey, Obear, 23 C. Cls. R., 277.) The case at bar comes within this rule. Though there is nothing to show the insurance of any part of the ship in favor of the one-third interest not claimed, the insurance receipt does show an ownership by Spear of a two-thirds _ interest. Supplemental to this we have as testimony the first register, which contains evidence of a transfer to some- one. This, taken in connection with the settlement made -by the ' insurance company, leaves no room to doubt that Spear became the owner of two-thirds of the vessel, and the award to Spear must accordingly be for two-thirds.
The claim to compensation for the cargo stands upon an entirely different basis.
The schooner carried a manifest, showing of what the cargo consisted. This of itself did not establish neutrality of the cargo. (The Schooner Betsey, Wyman, 36 C. Cls. R., 256.) The invoice, however, shows the goods were shipped for account of one of the owners of the vessel.
*124 The protest of the master does not show the circumstances of the seizure and condemnation. There is nothing in it to show that the cargo was neutral or that proof of neutrality was offered or that the rights of the supposed American owner were asserted. It is true the protest contains a statement that some articles of merchandise on board belonged to the master, but his claim is not before the court, and we are dealing with the claim of the one alleged to be • the owner of practically everything seized. The master’s protest fails to show that all his papers were on board at the time of the capture, or what his papers were. Under these circumstances we are constrained to believe that there were no papers relating to the cargo except an alleged invoice, and certainly the important fact of neutrality was not disclosed by it.
But the presence of the paper purporting to be the invoice is not disclosed by the decree. This paper appears among the files in such form as to preclude its acceptance as an invoice. The insurance company may have received this paper after the capture. But upon the presumption that it was an invoice it is contended that the shipment of the merchandise for account of one of the owners is disclosed and that the presumption of neutrality must prevail. The case of the Speedwell, Orwoford ante, p. —), where the presumption of ownership arose in favor of the person whose name appeared on an invoice, is cited in support of the contention.
The question of neutrality of cargo did not arise in the Speedwell. The claim of title to the cargo by the owner of the vessel was there denied because the invoice showed the title to be in another person. The innocence of the cargó having been established, ownership thereof was of no further concern to the captors; but, being a material inquiry on a claim for its value under the French spoliation act, the invoice was accepted as the best and only evidence of ownership against persons exhibiting nothing whatever in their favor but ownership of the vessel.
It is further said that if the tribunal which condemned the ■ship had not possessed complete proof of the neutrality of the cargo the matter would have been mentioned in the decree.
In all cases under the act of January 20, 1885 (24 Stat. L., 505), the United States are entitled to whatever valid defenses *125 belonged, to France. Though the ground of the condemnation on the face of the decree be illegal, it was nevertheless the right of France at the time of the capture to rely upon all the facts, and that is the right of the United States now. (The Joanna, Boggs, 24 C. Cls. R., 198.)
It not being necessary for the decree to recite all the grounds of condemnation, and the court now finding that neutrality of the cargo was not established, the claim for the cargo and the insurance thereon is denied. The owner of two-thirds of the vessel is entitled to indemnity for the proven value of his interest, together with freight earnings,-and the case will be so reported to Congress with a copy of this opinion.