Peelle, J.,
delivered the opinion of the court:
The schooner Maria, Thomas Gardiner, master, the vessel in controversy, sailed from New London, Conn., October 27, 1796, on a commercial voyage bound to Barbados laden with a cargo of fish, lumber, and oxen, consigned to Messrs. Cru-den, Pollard & Stewart, of the latter place. Upon the arrival of the vessel at Barbados, the master, in his protest, says ‘ ‘ that he sailed by the orders of said house of Cruden, Pollard & Stewart for Tobago, where he discharged;” that the vessel sailed from thence to Martinique and Grenada, and that while pursuing her return voyage from Grenada to Martinique in January, 1797, she was seized on the high seas by the French privateer Two Friends and carried into Gaudeloupe, where both vessel and cargo were condemned by the French tribunal of prizes sitting at that place.
When so seized and condemned the vessel was laden with a cargo consisting of planks and copper nails. The grounds of condemnation were: “Considering that it follows from all the documents, particularly from the instructions given to Capt. Thomas Gardiner by the citizen Cruden, one of the victual-lers of the English army at Martinique, that the schooner Maria sails from island to island in the sendee of the enemy; that she has on board planks and copper nails for the sheathing of English vessels, and that consequently she renounced her neutrality,” the vessel was declared to be good prize.
The question presented for our decision, therefore, is: Was the condemnation legal? The claimant’s contention is that inasmuch as article 24 of the treaty of 1778 between the United States and France, then in force, provided that “planks, boards, and beams, and all other things proper, either for building or repairing ships, and such other goods as may not have been worked into the form of any instrument or thing prepared for war bjr land or by sea shall not be reputed contraband,” that therefore the condemnation on the grounds stated was illegal.
With what cargo the vessel sailed from Tobago to Martinique and from thence to Grenada does not appear, either from the master’s protest or otherwise, but from the decree it appears that the cargo of the vessel, at the time of her cap *151 ture, from Grenada to Martinique, consisted of “planks and copper nails for the sheathing of English vessels,” but to whom consigned does not appear.
The master in his protest (after reciting that he had sailed for Barbados with a cargo of lumber and oxen consigned to Messrs. Cruden, Pollard & Stewart at that place) says that upon his arrival at Barbados he sailed, by the order of the said house of Cruden, Pollard & Stewart, to Tobago, where he discarged, soon after which he “sailed from Tobago to Martinique and Grenada, but that on his return from the said Grenada to Martinique, on 4th January now last past, he was taken by the French privateer Two Friends, and carried into Gaudeloupe,” where the condemnation took place, he being denied the right to defend his vessel.
Assuming that the seizure was lawful and that the vessel was for the reasons stated subject to condemnation and the master to imprisonment, was the condemnation legal when the’master was denied the right to defend?
In the case of the brig Sally, Wells, master (37 C. Cls. R., 74, 77), the court held that even if the capture of the vessel was legal, “it was the duty of the captain of the capturing vessel to afford the captain of the Sally every reasonable opportunity to assert and maintain his rights in the proceedings to condemn the vessel founded upon the capture.” Furthermore, it was held that “ it is not the seizure which confers the right of property upon the seizing vessel, but it is the judicial determination of the question of the liability of the ship founded upon such seizure.”
In the case of the snow Thetis, Cameron, master (37 C. Cls. R., 470), it was in substance held that where the proof shows that the master was deprived of the right to defend the condemnation was "ex parte and the proceedings illegal; that to enable the captor to dispose of the ship and cargo there must be a regular judicial proceeding wherein both parties might be heard.
Does the present case, therefore, come within the rule thus announced ?
True, the right of a neutral to carry on trade with a belligerent is subject to the condition that such right shall not be exercised so as to aid the belligerent, either in the prosecution *152 of his own operations or in escaping- from the effects of those of his enemy. (Hall’s Int. Law, 534.) But a violation of that right will not deprive the master of his right to appear and defend.
The vessel may have been engaged in carrying goods to aid in the sheathing of English vessels, but the vessel was an American vessel, owned by citizens of the United States, and it was the right of the master to be present to defend against the charge so made, and as he was deprived of that right the court cannot presume that the grounds of condemnation were well founded. Nor can it be held that the decree under the circumstances is conclusive on that point, as the condemnation was ex parte and the proceedings illegal. (Snow Thetis, supra.) Hence the sale and disposition of the ship and cargo were without that judicial sanction essential to pass title.
It must therefore be held that the condemnation was illegal, and for that reason the claimants are entitled to indemnity' for the insurance paid on the vessel.
The owners of the vessel and. cargo are not in court, the only claims being those of the insurers of the vessel. The findings of fact, together with this opinion, will be certified to Congress accordingly.