Weldon, J.,
delivered the opinion of the court:
The brig Fair American, Forrest, master, jailed on a commercial voyage on the 8th of November, 1798, from Surinam bound for Philadelphia, and while peacefully pursuing the voyage was captured on the high seas on the 17th of Novem-' ber by the French privateer Jalouse. On the 20th of November she was recaptured by the United States sloops of war Montezuma and Norfolk.
On the next day, to wit, November 21, she was again captured by the French frigates Volunteer and Insurgent and a prize crew placed on board. On the evening of the same day she was recaptured by the United States sloop of war Montezuma and taken to the port of Antigua and there ordered to the port of Philadelphia. Being unable to reach that port, the vessel was taken to the port of New York, where the *191 vessel and cargo were libeled in the District Court of the United States for the district of New York; and on the 11th day of February, 1799, condemned to pay a salvage of one-half of the appraised value of vessel and cargo.
The vessel was appraised at $6,250 and the cargo at $24,593.16, making the aggregate $30,843.16, one-half of which was paid by the owners.
From this decree an appeal was entered by Isaac Harvey, jr., owner of the vessel and part of the cargo, but the appeal was abandoned.
The- Fair American was a duly registered vessel of the United States, of 145^f tons, built in the year 1796, and owned by said Harvey, a citizen of the United States.
The main question to be determined in the decision of the cause is, Were the seizures of the vessel by the French privateers illegal; and,, if not shown to be such by the evidence, are the claimants entitled to recover the amount of salvage paid, or any amount, because of the condemnation by the United States court in-the proceeding for salvage?
Both seizures were made by French privateers when war was flagrant between France and England and after the abrogation of the treaty which had been entered into upon the part of .the United States with the Government of France, denominated Treaty of Amity and Commerce. (8 Stat. L., 12.) As has been said in the case of The schooner Nancy, Ward, Master (37 C. Cls. R., 410):
“At the time of the capture, under and by virtue of international law, privateers of France had the undoubted and undisputed right to search, and, if necessary, to seize, American vessels. The right of search is preliminary to the right of seizure, and the right of seizure depends upon the result of the exercise of the right of search. Search and seizure are not necessarily illegal, because in time of war the belligerents, founded upon the condition of war, have the right to the exercise of both. Upon the seizure of a vessel, although neutral, all presumptions are in favor of the seizing vessel, and the onus is thrown upon the seized vessel, and therefore when a seizure is made the presumption of law is that it was properly made. If, upon the seizure, all presumptions are in favor of the seizing vessel, there is nothing in this case to indicate that the French vessel, in making a search and consequent seizure, acted illegally so far as the mere seizure is concerned. If the seizure was made in a lawful manner, and if no illegality *192 is shown to have existed in what the French privateer did afterwards, then no grounds of recovery exist founded on seizure alone. The liability of France depends upon what it did, and not being a party to the proceedings in which the decree of salvage was made, France is not-bound bjr the legal effects of that decree, except as a mere measure of the damages suffered by the owners of the vessel. The liability of the United States in this proceeding is measured by the liability of France, and if no facts are shown which would make France liable (if this was a proceeding against France), then no liability attaches to the United States under the treaty of September 30, 1800.”
At the time of the seizure of the vessel, it being after the abrogation of the treaty of amity and commerce made in 1788, the French privateer had the right to seize for the purpose of search the vessels of neutrals in the prosecution of the Avar against its enemy, and France was responsible only for the improper and illegal exercise of that right. The right of search is one of the incidents of war to which neuti'als may be subjected, in order not to interfere Avith belligerents in the prosecution of hostilities against each other. It being a recognized right, the proper exercise of the right of search invotyes no responsibility of wrong against the power exercising it.
Upon the seizure of a neutral vessel all presumptions are in favor of the legality of the seizure, it being in pursuance of a conceded right; and the burden of proving to the contrary is thrown upon the parties contesting the legality of the seizure. (Schooner Sally, 37 C. Cls. R., 542.)
As was said in the case of the Nancy, Ward, master (supra), “there is nothing in this case to indicate that the French vessel in making the search and consequent seizure acted illegally so far as the mere seizure is concerned.” This case differs from the Sally in this, to wit, that case did not stop with the mere seizure; but it Avas shown that after the capture the French authorities despoiled the ship by breaking its hatches and plundering it of a great part of its cargo, besides destroying the papers of the ship, by the neglect of the French officers in charge. The court in that case, while holding that the illegality of the capture was not shown, it held that the French authorities violated in a gross manner the rights of the American oAvners after the capture; and because of such *193 illegality of conduct upon the part of the seizing parties the court held that there was a right of recovery. There may be a legal seizure, but the right of the capturing party may be defeated by the illegality of proceedings incident to the care, custody, and condemnation of the alleged prize. In this case the findings show that the Fair American was an American vessel; but beyond that the proof is silent in the requisites to show that the seizure was illegal. The seizure is the only thing complained of in the proceeding; the evidence being deficient in showing facts from which the court would be justified in holding that it was an illegal seizure on the part of the French vessel, and failing in that element of necessary proof, the court decides that the seizure was not illegal. It is only the illegal acts for which the law allows a finding in favor of the claimant.
The findings, with a copy of this opinion, will be certified to Congress.