Howky, J.,
delivered the opinion of the court:
This is a motion on behalf of claimant to amend the findings and substitute for the court’s conclusions of law a different result on the facts as found in a cause arising under the act of January 20, 1885, 23 Stat., 283.
*191 It was shown by the findings of the court that the ship Asia was stopped on the high seas by a French privateer; and although it appeared that the ship was provided with a register, sea letter, invoices, etc., the master of the privateer undertook to carry the Asia as a neutral in for examination. Before reaching any port the privateer, with the merchantman so taken by the privateer, was recaptured by an English privateer and taken into New Providence'. The court of vice admiralty there, on a libel proceeding instituted by the English, awarded salvage in the amount of one-sixth of the value of the vessel and cargo. Tt was held on these facts that the detention was not illegal and that the salvage paid to the British for the recapture was not such a claim as rendered this Government liable under our treaty with France and under the rule prescribed by the act providing payment by the United States for the act of the French Government through the privateer charged with the illegal detention.
The act of our jurisdiction requires the court to decide upon the validity of this and other spoliation claims according to the rules of law, municipal and international, and the treaties of the United States applicable to the claims.
This court has passed upon several cases involving alleged illegal detentions.
In the Sally, 37 C. Cls. R., 642, salvage was clained. It was there contended that the authority of the French Government to make the capture was not shown, although the court held that whether the capturing vessel was authorized by its Government to make the capture was questionable. It was also contended that the neutrality of the cargo did not appear. It was held as to this that the court could not presume that the ship’s papers were such as to show neutrality enough to justify the release, because the presumption would not only obviate the necessity of the claimant proving the illegality of the capture, but would at the same time defeat the right of the United States to assert the defenses presented. In reporting no allowance the court approved what had been said in the previous case of the schooner Nancy, 37 C. Cls. R., 401, which likewise was a case to recover salvage for a recapture by a British vessel from a French privateer. In *192 the Nancy it was said that the privateers of France had the undoubted and undisputed right to search and, if necessary, to seize American vessels; that the right of search was preliminary to the right of seizure, and the right of seizure depended upon the result of the exercise of the right of search; that search and seizure were not necessarily illegal, because in time of war the belligerents, founded upon the condition of war, had the right to the exercise of both search and seizure. All presumptions, said the court in the case quoted, were in favor of the seizing vessel and the onus is thrown upon the seized vessel, and when a seizure was made the presumption of law arose that it was properly made. The nub of the whole opinion in the case of the 8ally, ante, outside of the case of the Nancy, ante, was that it would not do to hold that by reason of the decree appearing in the case of the 8ally the vessel would have been condemned regardless of the papers she had on board, for (said the court)—
“ If we were so to assume, still the question would remain that for want of proper papers she might have been legally condemned.”
From the two cases we extract the rule that if the seizure was made in a lawful manner , and no illegality be shown, recovery could not be had.
In the case of the Fair American, 39 C. Cls. R., 184, there was no allowance for salvage on account of seizure because the court could not find that the seizure was illegal. The court differentiated the latter case between the Nancy and the Sally by showing that in the case where there was an allowance the French authorities despoiled the ship and permitted damages by neglect, and although the illegality of the capture was not shown, it was disclosed that the French authorities had violated in a gross manner the rights of the American owners after the capture. The similarity of the Fair American and the present case of the Asia is striking, in that each case discloses an American vessel; but beyond this fact the proof is silent in the requisites of illegal seizure or illegal conduct.
Here, as in the Fair American, the seizure is the only thing complained of in the proceeding. The question is whether the evidence is sufficient in showing facts from *193 which the court can be justified in holding that it was an illegal seizure.
In the leading case of the Betsey, Murphy, master, 1 C. Rob., 92, Lord Stowell decided that in a case of neutral property captured by the English and recaptured by the French, compensation should be refused on the ground of a bona fide possession. He said, “I must distinctly lay it down that the irregularities ” to produce responsibility must have been such as would justly prevent restitution of the captured property, but courts would exonerate the original captors until the irregularities were shown to be of such character as to prevent restitiotion. This case was affirmed on appeal.
In the Concordia, 2 C. Rob., 102, there was presented the case of an embezzlement of the property captured and where liability was asserted by the court under a decree rendered against those in possession to make restitution. An examination of this case will show that our own case of the Fair American, ante, came within the letter and spirit of that decision.
Thus the international rule is clearly stated by both the English and American courts, and fits the present case exactly unless there be something in the treaty of 1778, 8 Stat., 12, to establish a different rule.
The treaty provided that when either power should be engaged in war the ships of the other should carry a sea-letter or passport and a certificate or manifest. The sea letter or passport was to be not more than one year old," and the certificate or manifest was to be issued “by the officers of the place whence the ship set sail,” and to contain “ the several particulars of the cargo.” In the case of the brig Venus, 27 C. Cls. R., 116, it was held that the' Venus did not carry the two prescribed papers, the passport and manifest, but she did have on board her register and crew list, and that the absence of the passport and manifest may have rendered the brig liable to detention and search, but did not afford ground for capture and condemnation.
In the case of the ship Tom, 39 C. Cls. R., 290, it was held that a beligerent seizing a neutral vessel upon mere *194 suspicion is responsible for the act but excusable for the loss of the vessel only where it is caused by unavoidable casualty. In the Tom it appeared that the French captor ran his prize ashore to save himself'from capture, which was destructive of the neutral’s right to restitution, and responsibility ivas declared because the act of destruction was not inevitable. But there the court adverted to the rule that a naval officer on the high seas must act summarily, because he could not examine witnesses, and because he was not bound to take unverified explanations but must judge upon the documents furnished where the ownership was left by the documents-'a subject of reasonable suspicion.
In the ship Joanna, 24 C. Cls. R., 198, this court also held that where a naval officer reasonably suspected that the cargo was belligerent property he could take the vessel in to have the question determined by a proper tribunal.
In the case of the Polly, decided in 1908, this court held that a duly registered vessel of the United States was not in itself proof of ownership. In the case of the Philanthropist, recently decided, it was said that “ the manner of establishing ownership is well known and well defined,’.’ and the court adhered to the rule established by several previous decisions denying the admissibility of the proceedings of the admiralty courts of England.
The matter of liability in the present case depends upon the proof and the competency of the evidence, as that evidence was offered to the privateer at the time the ship was •detained for purposes of examination and not by what has appeared since. Although the property taken in this case might have been condemned by a prize tribunal, France would have been liable for a return of the property if the prize proceedings disclosed the presence of the necessary papers to entitle the Asia to the benefit of the treaty. But if there were any circumstances of doubt or suspicion, as, for instance, the nature of the voyage, or the disclosure of contraband property, whether vessel or cargo, or if the conduct of the captured crew furnished probable cause, the captors could be allowed their costs and expenses for taking the property in for adjudication.
*195 A sea letter is an instrument of the maritime laws of nations and under the denomination of a passport as well as of a sea letter treaties sometimes require it to be carried by merchant vessels belonging to the contracting parties and are necessary for neutral vessels in a time of war. 2 Moore International L. Dig., 1059. The register of a ship emanates from the customhouse and merely shows the nationalty of the vessel leaving port. Passports came from the President of the United States or issued in his name. At the time of the seizure of the Asia there was in use a paper known as a Mediterranean passport signed by the Secretary of State. These passports were authorized under an act of Congress approved June 1,1796, which directed the Secretary of State, with the approbation of the President, to prepare a form of passport for ships and vessels of the United States going to foreign countries.
The competent evidence in this record does not disclose to the satisfaction of the court the presence of any certificate of .ownership, sea letter, or passport within the terms of the treaty at the time of this detention.
Eliminating from the original findings as incompetent or insufficient any statement indicating the presence of any passport or its equivalent, the court is under the necessity of concluding that the detention of the vessel by the French privateer was not illegal and that the claimants are not entitled to recover.
The findings of the court as amended, with the conclusions, will be transmitted to Congress, together with a copy of this opinion.